IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-00964-WJM-CBS

STEVEN POWELL

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY

      Defendant.

---

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

The Defendant, Allstate Fire and Casualty Insurance Company, through their attorneys, Tucker Holmes, P.C., submit the following Motion for Partial Summary Judgment:

### I. MOVANT'S STATEMENT OF UNDISPUTED FACTS

1. This case arises out of an automobile versus motorcycle accident that occurred on August 5, 2014. (See, Complaint, **Document #4**, ¶¶ 6-7.)

2. Defendant was first notified of the loss on August 5, 2014. (See **Exhibit A**, Affidavit of Tom Linton, ¶ 9.)

3. On March 5, 2015, Defendant received a letter from Plaintiff's counsel, requesting permission to settle with the underlying bodily injury carrier, State Farm, for the at-fault driver's $25,000 policy limits. (See **Exhibit A**, Affidavit of Tom Linton, ¶ 10.)

4. On March 6, 2015, Allstate adjuster Linda May sent Plaintiff's attorney a letter granting permission for Plaintiff to settle with the at-fault driver and State Farm Insurance Company for the $25,000 liability limits. (See **Exhibit A,** affidavit of Tom Linton, ¶ 11.)

5. On March 6, 2015, adjuster Linda May performed an initial UIM review. She noted that Plaintiff had two policies with Allstate, a motorcycle policy with UIM limits of "$100,000/$300,000K"; and an auto policy with UIM benefits of "$100,000/$300,000K." She noted the motorcycle policy would be primary and his auto policy would be excess. (See **Exhibit A,** affidavit of Tom Linton, ¶ 12.)

6. On March 6, 2015, Ms. May spoke with Plaintiff's counsel and was advised that Plaintiff would be sending a demand letter to Defendant in the following week. (See **Exhibit A,** affidavit of Tom Linton, ¶ 13.)

7. On March 13, 2015, a demand letter was received from Plaintiff's counsel, alleging medical specials in the amount of $83,689.32, lost wages of $10,281, and miscellaneous losses of $226.22. (See **Exhibit A,** affidavit of Tom Linton, ¶ 14.)

8. On March 19, 2015, Defendant sent a letter to Plaintiff's counsel acknowledging receipt of the demand letter and accompanying supports. Defendant advised that it would be contacting Plaintiff's counsel with an offer within a reasonable time frame, provided all the necessary information was included to evaluate the demand. (See **Exhibit A,** affidavit of Tom Linton, ¶ 15.)

9. On April 2, 2015, Michael Vink evaluated Plaintiff's claim and noted that Defendant needed the final discharge note from Plaintiff's orthopedic physician, and noted there

was a question regarding whether Plaintiff was a listed driver on his stepson's insurance policy. (See **Exhibit A,** affidavit of Tom Linton, ¶ 16.)

10. Mr. Vink also determined that Plaintiff's UIM claim was valued at Plaintiff's full $100,000 motorcycle UIM limits. (See **Exhibit A,** affidavit of Tom Linton, ¶ 16**.**)

11. On April 10, 2015, a letter was sent to Plaintiff's counsel requesting an affidavit of no other insurance regarding Plaintiff's resident brother-in-law. (See **Exhibit A,** affidavit of Tom Linton, ¶ 17**.**)

12. On April 30, 2015, Ms. May spoke with Plaintiff's attorney and was advised that Plaintiff does not live with his brother-in-law, but that he would check on it. Ms. May advised Plaintiff's counsel that if the doctor report was an error, then an affidavit of no other valid insurance was a moot point. Plaintiff's counsel also advised that he would check on the final discharge report from the orthopedic doctor. (**Exhibit A,** affidavit of Tom Linton, ¶ 18.)

13. On May 1, 2015, Ms. May spoke to Plaintiff's counsel again and was advised that there was no brother-in-law in Plaintiff's household. Ms. May determined that it should have said "stepson," and Plaintiff's counsel advised that he would check on that as well. Plaintiff's counsel also advised that he had the discharge records and he would email them to Ms. May. An additional 30 days to review and make an offer on the claim was granted. A follow-up letter was sent on May 1, 2015. (See **Exhibit A,** affidavit of Tom Linton, ¶ 19.)

14. On May 4, 2015, Defendant received correspondence from Plaintiff's counsel, including records from Plaintiff's visit to the orthopedist, and Mr. Powell's son's insurance card. (See **Exhibit A,** affidavit of Tom Linton, ¶ 20.)

15. On May 6, 2015, Defendant filed a claim for excess UIM coverage with 21st Century, the insurer for Plaintiff's stepson. (See **Exhibit A,** affidavit of Tom Linton, ¶ 21.)

16. On that same day, Ms. May sent a letter to Plaintiff's counsel confirming that Defendant would file a UIM claim with 21st Century. She also advised that until Defendant knew if there was additional insurance, an offer could not be made on Mr. Powell's second insurance policy. (See **Exhibit A,** affidavit of Tom Linton, ¶ 22.)

17. On May 7, 2015, Ms. May was advised that Plaintiff's stepson did not have UM/UIM coverage on his policy. (See **Exhibit A,** affidavit of Tom Linton, ¶ 23.)

18. On May 29, 2015, Ms. May wrote to Plaintiff's counsel advising that Defendant was evaluating Plaintiff's demand and would respond by June 5, 2015. (See **Exhibit A,** affidavit of Tom Linton, ¶ 24.)

19. Ms. May performed her evaluation of Plaintiff's claim on June 1, 2015. She evaluated the grand total value of Plaintiff's claim to be $140,000, with offsets of $125,000 for the $25,000 bodily injury policy and the $100,000 motorcycle policy. She indicated that the settlement range was up to $15,000 on the automobile policy. (See **Exhibit A,** affidavit of Tom Linton, ¶ 25.)

20. On June 4, 2015, Ms. May spoke with Plaintiff's counsel and advised she had an offer of settlement. She offered $10,000 and explained that she had allowed for general damages in case he had his plate removed, but no meds since it was most likely that the plate would not be removed and there was no indication the plate should be removed or was causing issues. She also indicated she was more than happy to reevaluate if this was not the case and requested

anything new. On June 4, 2015, she sent a follow-up letter confirming her conversation with Plaintiff's counsel. (See **Exhibit A,** affidavit of Tom Linton, ¶¶ 26-27.)

21.     On June 30, 2015, Ms. May spoke with Plaintiff's attorney. At that time, he demanded $75,000 in new money for a grand total value of $200,000. She indicated that the attorney provided nothing additional, that they were too far apart and therefore, there was nothing to reasonably put more money on the claim. She indicated that she was staying with $10,000 in new money. (See **Exhibit A,** affidavit of Tom Linton, ¶ 28.)

22.     On July 6, 2015, Ms. May sent Plaintiff's counsel a letter indicating that Defendant felt that the evaluation was fair with regard to Plaintiff's injuries, and requested additional information Plaintiff would like Defendant to consider. (See **Exhibit A,** affidavit of Tom Linton, ¶ 29.)

23.     On August 6, 2015, Ms. May spoke with the paralegal at Plaintiff's counsel's office, who requested that they arbitrate the case. Ms. May advised that since this is a Colorado policy, Defendant does not arbitrate UIM claims. Ms. May was advised that they would use their litigation firm, Greg Gold, and then file suit. The paralegal further indicated that they were still firm on their $75,000 demand, and Ms. May advised that she felt that $10,000 in new money was appropriate at the time, but she would review any further information that they may have. (See **Exhibit A,** affidavit of Tom Linton, ¶ 30.)

24.     No additional information was received until a settlement demand letter was received from Plaintiff's new counsel, The Gold Law Firm, on February 25, 2016. At that time, Defendant was provided with an earning capacity evaluation and life care plan from Vocational Diagnostics Incorporated. That demand letter indicated that Plaintiff was making a one-time

policy limits settlement demand that was only open until March 10, 2016. (See **Exhibit A,** affidavit of Tom Linton, ¶ 31.)

25. Ms. May reviewed the newly received information on March 7, 2016 and noted that there was additional information required to confirm her evaluation. The future care evaluation referred to an IME conducted by Dr. David Reinhard on April 10, 2016, which was not included in the new information sent to Defendant. (See **Exhibit A,** affidavit of Tom Linton, ¶ 32.)

26. On March 8, 2016, Ms. May contacted Plaintiff's counsel's office and requested the IME report from Dr. Reinhard to reevaluate the claim. (See **Exhibit A,** affidavit of Tom Linton, ¶ 33.)

27. Ms. May received the report from Dr. Reinhard on that same day, and requested an additional week to respond to the demand in order to obtain additional authority. (See **Exhibit A,** affidavit of Tom Linton, ¶ 34.)

28. On March 9, 2016, the extension for Ms. May's evaluation was granted by Plaintiff's counsel. (See **Exhibit A,** affidavit of Tom Linton, ¶ 35.)

29. Ms. May performed her supplemental evaluation on March 9, 2016. She evaluated the claim at up to $75,000 in new money, but requested the input of an evaluation consultant to see if she had missed anything and felt the value should be more. (See **Exhibit A,** affidavit of Tom Linton, ¶ 36.)

30. Unbeknownst to Defendant, suit was filed on March 11, 2016. (See **Document #4**, Plaintiff's Complaint and Jury Demand.)

31.     Evaluation consultant, Pete Miller, performed his evaluation on March 14, 2016. During his evaluation, Mr. Miller noted that there could be comparative negligence on the part of the insured, as the accident might have been avoided. He noted that he did not see a whole lot of value in the life care plan report, as it was based on speculation. He also noted that there was no doubt that Plaintiff would someday have his hardware removed. He noted that with the projection, the specials could be in the $101,000 area with past and future wages considered. He noted that Plaintiff's claim could be worth about $123,000, but he did not think they were there yet, as evidenced by his view of comparative negligence. He also noted that the parties were "close enough to where it is not worth the time and expense to challenge this too much and try to settle." He set the settlement range up to $100,000, and noted the rep could raise the issues he has mentioned plus her own. (See **Exhibit A,** affidavit of Tom Linton, ¶ 37.)

32.     On March 17, 2016, Ms. May sent a letter to Plaintiff's counsel advising that based on the new information submitted on February 26, 2016 and the previous information provided by Plaintiff's former counsel, Defendant increased its offer of settlement to $60,000 to settle Plaintiff's excess UIM claim. She noted that Defendant evaluated Plaintiff's gross tort value at $185,000 and after the $25,000 tort offset and $100,000 initial UIM settlement, $60,000 was new money. She also requested that Plaintiff submit any additional information they wished for Defendant to review. (See **Exhibit A,** affidavit of Tom Linton, ¶ 38.)

33.     On April 4, 2016, Ms. May called Plaintiff's counsel to discuss settlement and Defendant's last offer and was unable to reach Plaintiff's counsel. (See **Exhibit A,** affidavit of Tom Linton, ¶ 39.)

34. On that same day, Ms. May sent a follow-up letter indicating that Defendant was awaiting a response to the offer of settlement for $60,000. (See **Exhibit A,** affidavit of Tom Linton, ¶ 40.)

35. The Division of Insurance was served with Plaintiff's Complaint on Defendant's behalf on March 31, 2015. (See, **Document 1-5**, Affidavit of Service.)

## II. LEGAL AUTHORITY AND ARGUMENT

Pursuant to Fed.R.Civ.P. 56(b), "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." In this regard, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986). The purpose of summary judgment is to isolate and then terminate claims and defenses that are factually unsupported. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).

Rule 56 "imposes no requirement on the moving party to 'support its motion with affidavits or other similar material negating the opponents' claim.'" *John Hancock Mutual Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994) (quoting *Celotex* at 2553). Rather, the moving party simply "bears the initial burden of showing an absence of evidence to support the nonmoving party's case." *Celotex*, at 2554. "Once the moving party meets this burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, at 2554).

The party opposing the motion may not satisfy this burden by resting on mere allegations, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed.R.Civ.P. 56(e). Judgment for the moving party is appropriate when the non-moving party fails to make an adequate showing on an essential element of its case, as to which it has the burden of proof. *Cleveland v. Policy Mgmt. Sys. Corp*., 119 S.Ct. 1597, 1603 (1999).

Here, Defendant will demonstrate, through affidavits, documents and undisputed facts, that it conducted a reasonable investigation of Plaintiffs' UIM claim, based on the information provided to it by Plaintiff.

### III. LEGAL ARGUMENT

**A. Defendant is entitled to summary judgment in its favor on Plaintiff's claim for common law bad faith because Defendant's conduct in handling Plaintiff's UIM claim was reasonable as a matter of law.**

Plaintiff's second claim for relief, "Bad Faith Breach of Insurance Contract," alleges that Defendant breached its duty of good faith and fair dealing. In terms of the claim that Defendant acted in bad faith, Plaintiff cannot set forth any facts to establish that Defendant acted unreasonably and that it knew or recklessly disregarded the fact that its conduct was unreasonable. In the absence of any facts identifying the alleged unreasonable conduct by Defendant, Plaintiff's claim must fail.

In order to succeed on his claim for common law bad faith breach of contract, Plaintiff has the burden to prove by a preponderance of the evidence, each of the following elements: (1) Plaintiff had injuries, damages, and/or losses; (2) Defendant acted unreasonably in handling Plaintiff's claim for UIM benefits; (3) Defendant knew its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable; and (4) Defendant's unreasonable conduct was a cause of Plaintiffs damages. *See* Colo. Jury Instr., Civil25:2 (4th ed.); *see also, Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1274 (Colo.1985); *see also, Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 572 (Colo.App.2003). In a first-party case such as this, Plaintiff must prove more than simple negligence to establish bad faith. *Travelers Ins. Co. v. Savio*, 706 P.2d at 1276. Therefore, it is not enough for the Plaintiff to argue that Defendant's conduct was unreasonable. To respond to a motion for summary judgment in a case in which the Plaintiff is asserting that the insurer's settlement position constitutes bad faith, it is incumbent upon Plaintiff to establish that there is no reasonable basis for Defendant's position. Plaintiff must establish that there was no reasonable basis for Defendant's decision not to pay the benefits that were demanded. Further, Plaintiff must establish that Defendant also knew or disregarded the fact that its conduct was unreasonable.

Plaintiff cannot prove Elements 2, 3, or 4 of his claim for common law bad faith, each of which requires a showing of unreasonable conduct on behalf of Defendant in its handling of Plaintiff's claim for UIM benefits

The determination of whether an insurer has in bad faith breached its duties to its insured "is one of reasonableness under the circumstances." *Pham,* 70 P.3d at 572. The insured bears the burden of establishing "the insurer's knowledge or reckless disregard of the fact that a valid

-10-

claim has been submitted." *Id.* This standard of care "reflects a reasonable balance between the right of an insurance carrier to reject a noncompensable claim submitted by its insured and the obligation of such carrier to investigate and ultimately approve a valid claim of its insured." *Savio,* 706 P.2d at 1275.

In reviewing a bad faith claim, "the reasonableness of an insurer's conduct is measured objectively based on industry standards." *Zolman v. Pinnacol Assurance,* 261 P.3d 490, 496 (Colo.App.2011 ). Under Colorado law, an insurer acts reasonably when challenging claims that are "fairly debatable." *See Savio,* 706 P.2d at 1275 (quoting *Anderson v. Cant't Ins. Co.,* 271 N.W.2d 368, 377 (Wisc.l978)); *Zolman,* 261 P.3d at 496-97 (collecting cases); *Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 557 (Colo.App.1998). Ordinarily, what constitutes reasonableness under the circumstances is a question of fact for the jury. *Bankr.Estate of Morris v. COPIC Ins. Co.,* 192 P.3d 519, 524 (Colo.App.2008). In appropriate circumstances, however, "as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman,* 261 P.3d at 497 (citing *Bankr.Estate of Morris,* 192 P.3d at 524).

Defendant's conduct in evaluating Plaintiff's claim was reasonable. Upon receipt of Plaintiff's Demand, all materials were reviewed. A coverage issue was identified and immediately investigated. Additionally, Defendant considered all of the materials provided to it in its evaluation of Plaintiff's claims. Defendant immediately determined that Plaintiff's claim was worth at least the full motorcycle policy limits, and that policy was pain in full. Defendant then continued to evaluate Plaintiff's claim, with newly received information, including the final orthopedist discharge record from Plaintiff's orthopedist, which was received on May 4, 2015.

Once the coverage issue was resolved, and all records were received, adjuster Linda May performed her evaluation, and made a settlement offer of $10,000 on June 4, 2015.

Defendant asked Plaintiff numerous times to forward any additional information Plaintiff wanted Defendant to consider, so it could reconsider its evaluations.  Once Defendant received the life care plan and vocational rehabilitation report from Vocational Diagnostics Incorporated, Defendant considered these, and requested additional information that had not been provided. Upon receipt of Dr. David Reinhard's IME report, Defendant again re-evaluated Plaintiff's claim.  The IME report indicated that part of the possible future treatment was only a mere possibility, not a probability. Additionally, a careful review of the police report and statements made by Plaintiff to his physicians regarding his speed at the time of the accident led Defendant to have questions about Plaintiff's possible comparative negligence in not avoiding the accident. Defendant also had reservations regarding the speculative nature of the functional capacity evaluation and life care plan.

Despite these reservations, Defendant made a decision that, although the claim was not worth policy limits, it would set the settlement range from $60,000 up to the $100,000 policy limits. As part of settlement negotiations, Defendant then extended a good faith offer of settlement for a reasonable amount.  Unbeknownst to Defendant, Plaintiff had already filed this lawsuit, including the claims for bad faith breach of contract, prior to the agreed upon deadline for Defendant's evaluation.  Based on the foregoing, Plaintiff cannot meet his burden of proving that Defendant's conduct was unreasonable.

Division of Insurance amended regulation 5-1-14 provides guidance and support for Defendant's position that its conduct was not unreasonable, and that it complied with industry

standards. Amended regulation 5-1-14 provides that an insurer needs to make a decision to pay benefits under a policy within 60 days after a valid and complete claim has been received, if there is not a reasonable dispute between the parties and the insured has complied with the terms and conditions of the policy. 3 C.C.R. 702-5:5-1-14 § 4(A)(1). In determining if there is a completed claim, the regulation indicates that a claim may be complete if: (7) negotiations or appraisals to determine the value of a claim have been completed; (8) any litigation on the claim has been fully and finally adjudicated. 3 C.C.R. 702-5:5-1-14 § 4(A)(2)(a). Further, the regulation indicates that a reasonable dispute may include, but is not limited to: (7) negotiations or appraisals are in process to determine the value of the claim. 3 C.C.R. 702-5:5-1-14 § 4(A)(2)(b). The insurance regulations recognize if there is not a completed claim because negotiations on the claim are continuing.

It was not unreasonable for Defendant not to pay Plaintiff, since negotiations were still in progress at the time litigation commenced. Plaintiff simply disagreed with the value Defendant placed on his claim. Plaintiff gave Defendant a take-it-or-leave-it offer, after providing a significant amount of new information to Defendant, including a brand new independent medical examination report, life care plan and functional capacity evaluation. Defendant evaluated all of the information provide, had reservations about the speculative nature of the functional capacity evaluation and life care plan.

Once the insurer sets forth that there is no basis for the claim of bad faith, Plaintiff must come forward with admissible evidence that supports his claim of bad faith. Plaintiff cannot simply rely on conclusory allegations *Meuser v. Rocky Mountain Hospital*, 685 P.2d 776 (Colo.App. 1984). Plaintiff may have a different opinion regarding the value of his claim.

Plaintiff cannot contest that Defendant evaluated Plaintiff's claims based on the information it was provided. Plaintiff cannot allege that Defendant acted in bad faith simply because Defendant disagreed with his valuation of his claims for benefits.

There is no evidence to indicate that Defendant's actions were unreasonable and that it knew its actions were unreasonable or recklessly disregarded the unreasonableness of its actions. Even if the Court cannot conclude as a matter of law that Defendant's conduct was objectively reasonable, Defendant is entitled to summary judgment in its favor on Plaintiff's common law bad faith claim because Plaintiff cannot establish that Defendant either knew its conduct was unreasonable, or recklessly disregarded the unreasonableness of its conduct. To the contrary, Defendant's actions in reviewing and evaluating all of the information it had been presented with was reasonable and within industry standards, and judgment should be entered in Defendant's favor on Plaintiff's claim for bad faith breach of contract.

  **B**  **Defendant is entitled to summary judgment in its favor on Plaintiff's claim for violation of C.R.S. §§ 10-3-1115 and -1116 because there is no evidence in the record that Defendant delayed payment of UIM benefits actually owed without a reasonable basis.**

In order to establish a statutory claim for bad faith under C.R.S. §§ 10-3-1115 & -1116, Plaintiff must prove, by a preponderance of the evidence, that Defendant unreasonably delayed or denied payment of a claim for benefits owed to Plaintiff under the UIM coverage in the insurance contract. Pursuant to C.R.S. § 1 0-3-1115(2), in order to establish that a purported delay or denial of covered benefits was unreasonable, Plaintiff must establish that Defendant delayed or denied payment of UIM benefits due and owing to him without a reasonable basis. Plaintiff's statutory claim can be broken down into three elements: (1) UIM benefits under the

-14-

Policy were due and owing to Plaintiff; (2) Defendant delayed or denied payment of such UIM benefits that were due and owing; and (3) Defendant unreasonably delayed or denied payment of such benefits-- i.e., the delay or denial of benefits due and owing was without any reasonable basis.

Preliminarily, Plaintiff's claim for violation of C.R.S. §§ 10-3-1115 and 1116 fails as a matter of law because, as set forth above, the contract dictates that the amount of UIM benefits to which Plaintiff is entitled must be determined by agreement of the parties, or by a Court. [See, **Exhibit B**, Allstate Insurance Policy, p. Allstate 000916.] The value of Plaintiff's undisputed economic damages was less than the $125,000 he received from the at-fault driver's insurer, and the $100,000 Allstate Motorcycle Policy, therefore, there was no undisputed amount of economic damages that Defendant should have paid. See, *Fisher v. State Farm*, 2015 COA 57 (Colo.App. 2015.). Since the parties never reached agreement regarding the value of Plaintiff's non-economic damages, no additional UIM benefits were actually due and owing to Plaintiff, and Defendant. It is not unreasonable, or against industry standards, for the value of such a disputed claim to be determined by a court of competent jurisdiction.

Additionally, summary judgment on this claim is appropriate because there is no evidence that Defendant unreasonably delayed or denied payment of benefits owed to Plaintiff on his UIM claim.

Sections 10-3-1115 and 1116, C.R.S., "impose on insurers a ... standard of liability in addition to and different from that required to prove a claim for breach of the common law duty of good faith and fair dealing." *Kisselman v. Am. Family Mut. Ins. Co.,* 292 P.3d 964, 973 (Colo.Ct.App.2011). An insurer breaches the statutory duty if there was "no reasonable basis to

delay or deny the claim for benefits." *Id.* at 974 (internal quotation marks omitted); *see also* section 10–3–1115(2) (stating "an insurer's delay ... was unreasonable if the insurer delayed ... authorizing payment of a covered benefit without a reasonable basis for that action"). In contrast to a common law bad faith claim, "the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Group,* 2012 COA 9, ¶ 44, 275 P.3d 750, 760; *see id.* ¶ 44 (stating that a finding that a UIM claim was "fairly debatable" for common law purposes "would not alone establish that [the insurer's] actions ... were reasonable as a matter of law.").

In considering a claim for reasonable delay or denial pursuant to C.R.S. §§ 10-3-1115 or 10-3-1116, "[t]he reasonableness of an insurer's conduct is 'determined objectively, based on proof of industry standards.'" *Baker v. Allied Property and Cas. Ins. Co.,* 2013 WL 1397297, *13 (D.Colo 2013); *quoting Goodson v. Am. Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 415 (Colo. 2004). Under C.R.S. § 10-3-1115, an insurer is legally obligated to not unreasonably delay or deny payment of undisputed expenses, notwithstanding that other components of the insured's claim may be subject to reasonable dispute. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 36, cert. granted in part, No. 15SC472, 2016 WL 3207869 (Colo. June 6, 2016). Here an objective determination regarding Defendant's conduct based on the undisputed facts reveals such conduct was reasonable, and there exists no evidence to the contrary.

As set forth above in detail, Defendant made reasonable efforts to evaluate all of the information it was presented with, and make a reasonable determination as to the value of Plaintiff's claim. Defendant set a reasonable settlement range based on the information in front of it at the time the evaluation was made. Plaintiff can point to no industry standard that was

-16-

violated by Defendant's settlement range. Plaintiff simply disagreed that the value of his claim was anything less than the full $100,000 policy limits. As there is no evidence Defendant unreasonably delayed or denied anything without a reasonable basis with respect to Plaintiff's claim, summary judgment should be granted.

WHEREFORE, Defendant respectfully requests judgment in its favor on Plaintiff's claims for common law bad faith, and unreasonable delay and denial pursuant to C.R.S. § 10-3-1115/1116, and for any other such relief as the Court deems appropriate under the circumstances.

DATED: July 7, 2017

Respectfully submitted,

By: *s/ Kurt H. Henkel*
Kurt H. Henkel
Cheri R. Lazar
Nicole L. King
TUCKER HOLMES, P.C.
Quebec Centre II, Suite 300
7400 East Caley Avenue
Centennial, CO  80111-6714
Phone:  (303) 694-9300
Fax:  (303) 694-9370
E-mail: khh@tucker-holmes.com; crl@tucker-holmes.com and nlk@tucker-holmes.com
*Attorneys for Allstate Fire and Casualty Insurance Company*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on July 7, 2017, I electronically filed the foregoing **DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gregory A. Gold
Michael J. Rosenberg
Pamela B. Maass
The Gold Law Firm, LLC
7375 East Orchard Road, Suite 300
Greenwood Village, CO 80111
greg@thegoldlawfirm.net
mike@thegoldlawfirm.net
pam@thegoldlawfirm.net

               *The duly signed original held in the file located at Tucker Holmes, P.C.*

                 */s/ Kristina L. Johnson*
                Kristina L. Johnson