IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0964-WJM-CBS

STEVEN POWELL,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

---

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION *IN LIMINE***

---

    In this insurance action removed to this Court under 28 U.S.C. §§ 1332 & 1441, Plaintiff brings a contract claim seeking payment of underinsured motorist ("UIM") insurance benefits under a policy issued to him by Defendant Allstate Fire and Casualty Insurance Company ("Allstate"), as well as claims for common law bad faith breach of the insurance contract, and unreasonable delay or denial of insurance benefits under Colorado Revised Statutes §§ 10-3-1115 & -1116. Now before the Court is Allstate's Motion *in Limine*. (ECF No. 75.) Because the Motion seeks exclusion of evidence the Court can only properly evaluate at trial, it is denied without prejudice.

## I. BACKGROUND

    Plaintiff's claims arise from an August 5, 2014 motorcycle accident in which Plaintiff was seriously injured. After settling his claims with the other driver's insurance company for the policy limits, Plaintiff submitted his claims to Allstate. Plaintiff alleges that after paying the $100,000 limits applicable on his motorcycle policy, Allstate

engaged in bad faith and unreasonable delay or denial in refusing to pay the additional $100,000 in UIM coverage provided under his automobile policy.

In summary, Plaintiff claims Allstate failed to properly investigate his claim, undervalued his injury and damages, "lowballed" him in offers and negotiations, engaged in "bad faith negotiating tactics," including by raising Plaintiff's own comparative negligence, failing to offer amounts internally approved or set as reserves, by "trying to get Plaintiff to bid against himself," and by "misrepresenting the amount of Allstate's [claim] evaluation." (*See generally* ECF No. 44 at 34–38.)

Plaintiff's arguments of bad faith have focused largely on by Allstate's claim adjuster, Ms. Linda May, who was assigned to Plaintiff's claim on approximately March 5, 2015 and handled much of Allstate's claim evaluation and communications with Plaintiff's counsel. Plaintiff also focuses on Allstate's use of a proprietary software program, Colossus, in its internal valuations of Plaintiff's claim and potential damages.

For example, Plaintiff has argued Allstate is liable, in part, for:

- "[R]el[ying] on . . . Colossus—[while] understanding that the program had limitations and problems and would not result in a fair evaluation" (ECF No. 44 at 3);
- "[M]ak[ing] subjective discretionary adjustments to the figure which the software program spit out in order that the insurer could claim it did not rely exclusively on Colossus" (*id.* at 1–2);
- "[U]s[ing] the computer-generated figure, as subjectively adjusted, to try to leverage a resolution of Plaintiff's [UIM] claim for an amount substantially less than [his] coverage limit . . . which Defendant's claim file suggests it

2

knew to be owing *before* this lawsuit" (*id.* at 1–2); and,

- "simply input[ing] data into Colossus and then us[ing] the Colossus evaluation to try to justify less than full [policy limits] payment (*id.* at 36).

Plaintiff also claims Allstate "has failed to provide any evidence demonstrating how the Colossus program works" (*id.* at 36), and that Allstate misrepresented the amount of its own valuation to Plaintiff, at one point offering him $60,000 in settlement (out of the $100,000 auto policy limits), when Colossus had calculated a higher figure (*id.* at 44).

## II. ANALYSIS

Allstate's Motion seeks to exclude trial testimony from Ms. May regarding a supposed "rule of thumb" for internally valuing claims at an amount equal to "three times the medical specials."[1] (ECF No. 75 at 5; ECF No. 75-1 at 70:16–25.) This arose in response to deposition questions as to whether Ms. May had experience valuing claims before Colossus, and answered, in part, that "before Colossus . . . in the . . . mid '80s . . . three times a special . . . that was the tool." (ECF No. 75-1 at 70:18–20.)

Elsewhere in her testimony, however, Ms. May explained that "prior to Colossus, there were a lot of different ways" to evaluate a claim (*id.* at 72:12–13), that "things got

---

[1] References to "specials," *i.e.*, "special damages," as opposed to "general" damages, can mean different things in different contexts. In its summary judgment order, referencing the lexicon of insurance abbreviations and shorthands raised in the summary judgment record, the Court characterized the references here as using "specials" to refer to "readily calculable economic damages." (ECF No. 68 at 4.) Other courts have similarly described "general" damages in an insurance case as referring to "pain and suffering," and "specials" as "out-of-pocket loss." *See* 16 Steven Plitt, *Couch on Insurance*, § 229:58 (citing *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449–50 (S.D. Cal. 1995) (addressing amount-in-controversy under 28 U.S.C. § 1332)). While maintaining its general understanding of how the terms have been used in the record of this case, the Court realizes distinctions between "general" and "special" damages may be contested in this case and does not intend its use of these terms to offer any binding definitions.

more complicated" in later years, leading to the development of Colossus or similar tools (*see id.* at 70:23–25), that the "three times specials" guidance was used "back in the old days" (*id.* at 77:9–11), that now when she "hear[s] it on occasion," it "lets [her] know how old the attorney is" (*id.* at 77:18–19), and that she "[n]ever" uses this rule in current claim evaluations (*id.* at 77:20–22). Citing this testimony, Allstate characterizes the "three times specials" rule as anachronistic and argues it was never used to evaluate Plaintiff's claim. (ECF No. 75 at 4.) Allstate therefore argues that any trial testimony on this topic would be irrelevant, "an improper attempt to show the jury that Ms. May was aware of an evaluation method that may have provided a greater value," and would unduly "inflame the passions of the jury." (*Id.* at 4–5.)

Plaintiff responds that Ms. May's "experience valuing claims for so-called general damages . . . over the past 30 years" "is highly relevant" (ECF No. 79 at 1), that there is evidence that Ms. May "evaluated Plaintiff's general damages *prior* to using Colossus" (*id.* at 2), that her "experience bears on her personal credibility," and that "Allstate should not be permitted, on the one hand, to cite Ms. May's extensive training and experience to defend the reasonableness of her (and its) actions, and at the same time prevent Plaintiff from inquiring on cross-examination into the nature of Ms. May's prior training and experience when valuing claims for general damages" (*id.* at 3).

The contours of this potential testimony are not amenable to pretrial exclusion. Its admissibility necessarily depends on how it is elicited at trial, if at all. For instance, although "proof of industry standards" is relevant to Plaintiff's claims, *Goodson v. Am Std. Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004), the Court agrees that a

description of practices no longer in use generally, and not used here, would be of marginal relevance, but disagrees that such testimony would "inflame the passions of the jury." And, while Plaintiff argues Ms. May's experience may be relevant to her credibility, and if Allstate uses it to claim that its valuations were reasonable, the Court cannot determine now whether Allstate will, in fact, elicit Ms. May's testimony in that fashion. Further, while Plaintiff argues it should not be prevented from *cross-examining* Ms. May regarding "the nature of [her] prior training and experience," she in fact appears on *Plaintiff's* "will call" witness list, suggesting Plaintiff will examine her *before* Allstate has elicited anything about her training, experience, or handling of Plaintiff's claim. (*See* ECF No. 84.)

For all these reasons, the Court cannot evaluate before trial whether or not testimony regarding the supposed "three times specials" rule would be either relevant or unduly prejudicial. Accordingly, Defendant's Motion *in Limine* (ECF No. 75) is DENIED WITHOUT PREJUDICE to any objections or arguments which the parties may raise at trial. *See* Fed. R. Evid. 103.

Dated this 17th day of April, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge